**COMMON CAUSE, et al., Plaintiffs,**

v.

**FEDERAL ELECTION COMMISSION, Defendant.**

**Civ. A. No. 86–1838.**

United States District Court, District of Columbia.

Aug. 25, 1988.

Roger M. Witten, Shelia C. Cheston, W. Hardy Callcott, Wilmer, Cutler & Pickering, Washington, D.C., for plaintiffs.

Lisa E. Klein, Federal Election Com'n, Washington, D.C., for defendant.

## ·MEMORANDUM

FLANNERY, District Judge.

Common Cause and the other plaintiffs in this case have filed a motion seeking to enforce this court's order that the Federal Election Commission (FEC) reconsider its refusal to promulgate rules, under the Federal Election Campaign Act (FECA),[1] regulating so-called "soft money" in federal elections. The plaintiffs have asked the court to order the FEC to propose rules within 30 days, to compel the FEC to make the proposed regulations final as soon as is practicable thereafter, and to retain jurisdiction to ensure that the FEC complies with the mandate. For the reasons set forth herein, the court will not, at this time, impose a timetable on the FEC in the manner sought by Common Cause, but will instead retain jurisdiction and hold this motion in abeyance. While the motion is in abeyance, the FEC will report to the court on its progress toward compliance.

### I.

"Soft money" denotes contributions to federally regulated campaign committees in excess of the aggregate amounts permitted for federal elections by the FECA; these contributions, even if directed to national campaign entities, are permissible if the money is not to be used in connection with federal elections. But Common Cause has contended that these excess contributions, purportedly devoted to state and local purposes, are pervasively and unlawfully dedicated to activities that influence federal elections, such as voter registration drives and other party-building activities that redound to the benefit of federal candidates.

Although the campaign committees are required to count a portion of such expenditures toward their federal limits on a "reasonable basis," [2] Common Cause alleged in a petition to the FEC for rulemaking that there has been widespread abuse of this allocation requirement, and that the FEC's failure to regulate this allocation process more closely is contrary to law. The FEC denied the petition, and Common Cause sought review of that denial in this court. In a Memorandum and Order filed on August 3, 1987,[3] the court granted partial summary judgment to Common Cause and ordered the FEC to reconsider the petition for rulemaking.

After rejecting a contention by Common Cause that no allocation process is permissible at all under the FECA as amended, the court held that

> Common Cause is nonetheless correct that the FEC's failure to regulate improper or inaccurate allocation between federal and nonfederal funds with respect to these activities was contrary to law, since Congress clearly stated in the FECA that all monies spent by state committees on these activities vis-a-vis federal elections must be paid for "from contributions subject to the limitations and prohibitions of this Act." 2 U.S.C. §§ 431(8)(B)(x)(2), 431(8)(xii)(2), 431(9)(B)(viii), 431(9)(B)(ix)(2). That is, with respect to federal elections, "soft money" cannot properly be used for these activities under the FECA.[4]

Chiding the Commission for "permitting a variety of allocation methods and no clear guidance to those in whose interest it is to use as much 'soft money' in federal elections as they can," [5] the court held that the FEC had interpreted the FECA "in a way that flatly contradicts Congress's express purpose." The FEC was ordered to reconsider the petition "with an eye to revising" the pertinent regulations.[6] None of the

---

**1.** 2 U.S.C. §§ 431 *et seq.*

**2.** *See* 11 C.F.R. 106.1.

**3.** Common Cause, *et al.* v. Federal Election Comm'n, No. 86–1838 (Memorandum and Order granting partial summary judgment to Common Cause) (Mem.).

**4.** Mem. at 10.

**5.** Mem. at 12.

**6.** *Id.*

parties sought review of the court's decision.

More than seven months after the decision, the FEC published a Notice of Inquiry,[7] assertedly to generate "comment on the utility of allocation methods considered in the past as well as suggestions for alternative approaches."[8] Three comments were submitted, and four months have passed since the close of the comment period without further consideration by the Commission. At a hearing on this motion, counsel for the FEC would project no timetable for further action on the soft money issue, other than to represent that the comments already submitted will be before the Commission sometime in September, 1988. FEC counsel attributed this uncertainty to the many demands on Commission resources during an election year.

During the pendency of this issue, public attention to allegations of "soft money" abuses by the major political parties has increased, and these allegations find some confirmation in pronouncements by party leaders, who reportedly are set on exploiting the absence of regulation in fundraising for the 1988 presidential race.[9] While it is not for the court to pass on the accuracy of these reports or to assess the magnitude of the problem at this juncture, it is undisputed that there is a public perception of widespread abuse, suggesting that the consequences of the regulatory failure identified a year ago are at least as unsettling now as then.[10]

## II.

Common Cause correctly has identified two jurisdictional bases for its current motion: first, the court has inherent jurisdiction to interpret and enforce its prior orders, jurisdiction recognized in the federal courts' statutory authority to issue all writs "necessary or appropriate in aid of their respective jurisdiction";[11] second, the court has federal question jurisdiction[12] to "compel agency action unlawfully withheld or unreasonably delayed" under the Administrative Procedure Act.[13]

Under either jurisdictional theory, however, Common Cause must confront the federal courts' settled reluctance to insinuate themselves into the administration of an agency simply because that agency has been less than expeditious. As our court of appeals has pointed out, with respect to the FEC in particular, "[i]t is not for the judiciary to ride roughshod over agency procedures or sit as a board of superintendance [sic] directing where limited agency resources will be devoted. We are not here to run the agencies."[14] Indeed, in the case principally relied on by the plaintiffs, this circuit warned that it would "intervene to *override* agency priorities and timetables only in the most egregious of cases."[15]

It is precisely such intervention that Common Cause seeks, averring that the FEC's dilatory course is "inexcusable." In urging this conclusion on the court, Common Cause invokes the five factors that typically determine the appropriateness of judicial intervention to overcome agency delay. These include: the length of the delay, understood according to a rule of

---

7. 53 Fed.Reg. 5377 (Feb. 23, 1988).

8. *Id.*

9. *See, e.g.,* Edsall, *'Soft Money' Competition—GOP Seeking $50 Million from Big Donors,* Washington Post, Aug. 16, 1988 at A1, col. 2 ("in a major escalation of the fund-raising battle between the Dukakis and Bush campaigns, [Republican party officials] quietly have established a special 'soft money' program designed to raise between $30 million and $50 million from corporations and individuals"). An extensive compilation of other relevant news and opinion columns is appended to the plaintiffs' motion.

10. Mem. at 11–12.

11. All Writs Act, 28 U.S.C. § 1651(a).

12. 28 U.S. § 1331.

13. 5 U.S.C. § 706(1).

14. *Federal Election Comm'n v. Rose,* 806 F.2d 1081, 1091 (D.C.Cir.1986).

15. *Public Citizen Health Research Group v. Brock,* 823 F.2d 626, 629 (D.C.Cir.1987) (per curiam) (emphasis in original).

reason;[16] any time constraint suggested by the statute or legislative history;[17] the nature of the interests harmed by delay;[18] and the effect of expedition on competing or higher agency priorities.[19] In evaluating these factors, an agency's good faith does not preclude a conclusion that action has been unreasonably delayed.[20]

The Commission, by contrast, regards these factors as conclusive support in opposition to the plaintiffs' motion. First, the FEC notes that it has begun to respond to the court's mandate by soliciting public comment, and that the time that has elapsed since this court's decision does not begin to approach the three and five year periods of agency delay that courts have found to be reasonable.[21] Under the "rule of reason" developed by federal courts, delays—even those affecting safety—have lasted upwards of five and ten years before courts have seen fit to impose deadlines on an agency.[22] The Commission further points out that neither the FECA nor its legislative history suggest any timetable for rulemaking, despite fairly rigorous deadlines imposed for other FEC duties.[23]

As to the nature of the interests affected by the delay, the FEC asserts that the plaintiffs have an alternate remedy for the abuses they have alleged, in that any doc-

umented abuse of the allocation rules may be the basis for an administrative complaint even before any new rules are adopted.[24] According to the FEC, moreover, even the expedited timetable sought by the plaintiffs could not result in final rules before the November elections;[25] and the interests affected by this rulemaking arguably are less compelling than others, such as worker safety,[26] that have led to court intervention. Finally, the FEC contends that its own ordering of priorities is due particular deference in light of the many competing demands on its resources during an election year.[27]

The Commission's arguments thus counsel against court imposition of a strict timetable for the promulgation of new rules governing the use of soft money, but there are several circumstances that undermine the FEC's conclusion that court supervision is altogether unwarranted. First, the Commission's response to the mandate has been laggard: more than seven months passed before the Notice of Inquiry, and in four months since the close of the comment period the FEC has not yet completed its evaluation of the three comments received. A year is a relatively short period on any agency's rulemaking schedule, but this particular rulemaking was preceded by years

---

**16.** *Telecommunications Research & Action Center v. Federal Communications Comm'n,* 750 F.2d 70, 80–81 (D.C.Cir.1984) (*TRAC*).

**17.** *Id.*

**18.** *Cutler v. Hayes,* 818 F.2d 879, 898 (D.C.Cir. 1987) ("delays that might be altogether reasonable in the sphere of economic regulation are less tolerable when human lives are at stake.").

**19.** *TRAC,* 750 F.2d at 80.

**20.** *Public Citizen Health Research Group v. Food & Drug Admin.,* 740 F.2d 21, 34 (D.C.Cir.1984). Common Cause has not alleged, however, that the Commission's laggard response to the court's mandate exhibits bad faith.

**21.** *TRAC,* 750 F.2d 70 (five years); *MCI Telecommunications Corp. v. FCC,* 627 F.2d 322, 340 (D.C.Cir.1980) (three years).

**22.** *Brock,* 823 F.2d at 628 ("With lives hanging in the balance, six years is a very long time"); *United Steelworkers of America v. Pendergrass,*

819 F.2d 1263 (3d Cir.1987) (addressing ten year delay in hazard communication standards).

**23.** *E.g.* 2 U.S.C. § 437f(a)(1) (advisory opinions must issue within sixty (60) days).

**24.** *See* 2 U.S.C. 437g(a)(1) ("Any person who believes a violation of [the FECA] has occurred, may file a complaint with the Commission.").

**25.** Under 2 U.S.C. §§ 438(d)(1), 438(d)(2), the Commission must submit new rules to Congress for thirty (30) days before they become effective. Even if the FEC could propose new rules within thirty days, therefore, it would be altogether unlikely that any rules could be finalized before this year's elections.

**26.** *Cf. Cutler,* 818 F.2d 879 (D.C.Cir.1987) (delays "are less tolerable when human lives are at stake.").

**27.** *See Rose,* 806 F.2d at 1091–92 n. 17 (a judicial order "may well have adversely affected the FEC's ability to attend to 'activities of a higher

of inaction that "flatly contradicted Congress's express purpose."[28] The cumulative delay is made more troubling by the fact that, in this round, the Commission was not starting from scratch, but already had considerable record evidence on the issue before it; although deference ordinarily is accorded to an agency's decision to supplement the record, the plaintiffs' petition does not involve complex scientific or factual issues,[29] and this court's decision "did not contemplate going back to square one."[30]

The court also must reject the FEC's characterization of the harm resulting from its languid pace. Although lives do not hang in the balance, the climate of concern surrounding soft money threatens the very "corruption and appearance of corruption"[31] by which "the integrity of our system of representative democracy is undermined,"[32] and which the FECA was intended to remedy. Soft money does not present discrete and isolated FECA violations, but allegedly comprises system-wide abuse.[33] The asserted availability of the administrative complaint procedure, moreover, gives little solace to the plaintiffs, who understandably assume that the complaint and the petition would be the procedural equivalent of "a race between the tortoise and the tortoise."[34]

In light of the importance of the issue and the Commission's lack of expedition in meeting the court's mandate, a modicum of supervision appears to be appropriate even though the showing that would support imposition of a strict timetable has not been met. The court therefore will hold the Motion to Enforce in abeyance, and will order the FEC to report on its progress on the soft money issue every ninety days. This may entail a small intrusion into the Commission's election-year agenda, but the Commission could have addressed this problem long before the elections neared. The court will not countenance further delay simply because regulations cannot be readied in time for November; to do so would reward inaction with further immunity from judicial review.

The burden of reporting will not be great, and this approach will preserve the agency's autonomy while ensuring that the issue is not permitted to languish altogether. Such an order avoids "direct judicial meddling," while hastening "a clear end point to the regulatory snarl"[35] that has brought the plaintiffs back before the court.

### Conclusion

Common Cause has not shown that the Commission's delay, thus far, warrants the intrusive relief sought by the plaintiffs. Nonetheless, the FEC's delay in responding to the court's mandate is sufficiently troubling that the the court will retain jurisdiction and hold the Motion to Enforce in abeyance, and each ninety days from this date the Federal Election Commission will submit a concise report on its progress toward rules regulating soft money expenditures that influence federal elections. An appropriate order accompanies this memorandum.

### ORDER

The plaintiffs have filed a motion to enforce an earlier decision of this court,

---

or competing priority,' not the least of which was the Presidential election of that year.")

**28.** Mem. at 12.

**29.** Cf. Brock, 823 F.2d at 626 (recognizing that need to address "complex scientific and factual data" may justify additional delay).

**30.** United Steelworkers of America v. Pendergrass, 819 F.2d 1263, 1269 (3d Cir.1987). The FEC, like the Labor Secretary in Pendergrass, "does not point to any information received as a result of the [new Notice of Inquiry] which was not either known or readily ascertainable prior to our last decision." Id.

**31.** Buckley v. Valeo, 424 U.S. 1, 25, 96 S.Ct. 612, 638, 46 L.Ed.2d 659 (1976).

**32.** Id. at 26–27, 96 S.Ct. at 638.

**33.** Cf. Rose, 806 F.2d at 1092 n. 17 ("notwithstanding the obvious importance of the political process," case of FECA violations by single committee is unlike safety cases in which "agency delay is least tolerable").

**34.** Common Cause v. Federal Election Comm'n, No. 86–1838 (August 19, 1988) (transcript of hearing).

**35.** Brock, 823 F.2d at 629.

which ordered the Federal Election Commission (FEC) to reconsider the denial of the plaintiffs' petition for additional regulation of certain types of campaign contributions under the Federal Election Campaign Act, 2 U.S.C. § 431, *et seq.* The plaintiffs have asked the court to order the FEC to propose rules within 30 days, to make the proposed regulations final as soon as is practicable thereafter, and to retain jurisdiction to ensure that the FEC complies with the mandate.

For the reasons set forth in an accompanying memorandum, the court will not, at this time, impose a timetable on the FEC in the manner sought by Common Cause, but will instead retain jurisdiction, hold this motion in abeyance, and require the FEC to report its progress toward the promulgation of new rules. It is, therefore, by the court this 25th day of August, 1988

ORDERED that the plaintiff's motion to enforce the mandate of August 3, 1987, be held in abeyance; and it is further

ORDERED that the Federal Election Commission report to the court every ninety (90) days from the date of this order on progress toward rules governing "soft money."